**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**LAURA SOUTHARD,**

                    **Plaintiff,**

          **v.**                                    **1:12-CV-1220**
                                                         **(FJS)**

**CAROLYN W. COLVIN, Acting**
**Commissioner of Social Security,**

                    **Defendant.**
_____

**APPEARANCES**                         **OF COUNSEL**

**STANLEY LAW OFFICES**                 **JAYA A. SHURTLIFF, ESQ.**
215 Burnet Avenue
Syracuse, New York   13203
Attorneys for Plaintiff

**LAW OFFICES OF KENNETH HILLER,**      **KENNETH R. HILLER, ESQ.**
**PLLC**
6000 North Bailey Avenue – Suite 1A
Amherst, New York   14226
Attorneys for Plaintiff

**SOCIAL SECURITY ADMINISTRATION**      **ELIZABETH D. ROTHSTEIN, ESQ.**
**REGIONAL GENERAL COUNSEL'S**
**OFFICE, REGION II**
26 Federal Plaza – Room 3904
New York, New York   10278

**SCULLIN, Senior Judge**


### MEMORANDUM-DECISION AND ORDER

### I.INTRODUCTION

Currently before the Court are the parties' cross-motions for judgment on the pleadings.

*See* Dkt. Nos. 10-11.

### II.BACKGROUND

On March 5, 2009, Plaintiff protectively filed an application for Social Security

Disability Benefits ("DIB") pursuant to §§ 216(i) and 223 of the Social Security Act (the "Act"),

as amended, 42 U.S.C. §§ 416(i) and 423. *See* Dkt. No. 1 at ¶ 4. The alleged onset date of

disability is October 30, 2005. *See* Dkt. No. 1-1 at 5. On July 21, 2009, her claim was denied.

*See* Dkt. No. 1-1 at 5. On September 18, 2009, Plaintiff filed a timely written request for a

hearing before an Administrative Law Judge ("ALJ"). *See* Dkt. No. 1-1 at 5. On January 27,

2011, ALJ James E. Dombeck presided over a hearing in Rochester, New York. *See id*. Paul

Sylianou represented Plaintiff, who testified at the hearing. *See id*. In denying Plaintiff's claim,

the ALJ made the following findings:

1. The claimant has not engaged in substantial gainful activity since March 5, 2009, the application date (20 C.F.R. § 416.971 *et seq.*).

2. The claimant has the following "severe" impairment insofar as that term is interpreted by policy to mean having some, albeit minimal, effect on functioning: chronic low back pain (20 C.F.R. § 416.920(c)).

3. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 416.920(d), 416.925 and 416.926).

4. The claimant has the residual functional capacity to perform the full range of light work, as defined in 20 C.F.R. § 416.967(b).

5. The claimant is unable to perform any past relevant work (20 C.F.R. § 416.965).

6. The claimant was born on February 17, 1966, and was 43 years old, which is defined as a younger individual age 18-49, on the date she filed the application. She is presently 44 years of age (20 C.F.R. § 416.963).

7. The claimant has at least a high school education and is able to communicate in English (20 C.F.R. § 416.964).

8. Transferability of job skills is not an issue in this case because the claimant's past relevant work is unskilled (20 C.F.R. § 416.968).

9.  Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 C.F.R. § 416.969 and § 416.969(a)).

10. The claimant has not been under a disability, as defined in the Social Security Act, since March 5, 2009, the date she filed the application (20 C.F.R. § 416.920(g)).

*See* Dkt. No. 1-1 at 7-11; *see* Dkt. No. 8-2 at 13-17.

Plaintiff appealed the ALJ's decision to the Appeals Council. The Appeals Council considered Mr. Stylianou's representative brief, dated April 13, 2011. *See* Dkt. No. 1-2 at 2; *see* Exhibit "16E"; *see* Dkt. No. 8-6 at 85. In the brief, Plaintiff alleged that the ALJ made the following five errors:

1.  The ALJ erred when he was silent with respect to reopening Plaintiff's prior application. *See* Dkt. No. 8-6 at 87.

2.  The ALJ erred at step 2 when he failed to find Plaintiff's Degenerative Disc Disease Lumbar Spine and Bilateral Knee Arthritis to be severe impairments. *See id.*

3.  The ALJ did not apply the appropriate legal standards in evaluating Plaintiff's credibility (SSR 96-7p and 20 C.F.R. § 416.929). *See* Dkt. No. 8-6 at 91.

4.  The ALJ's Residual Functional Capacity finding is unsupported by substantial evidence and is the product of legal error in that the ALJ substituted his own lay opinion for that of multiple medical sources. *See* Dkt. No. 8-6 at 92.

5.  The ALJ's Residual Functional Capacity finding is unsupported by substantial evidence and is the product of legal error (SSR 96-8p and 20 C.F.R. § 416.920(a)). *See* Dkt. No. 8-6 at 93.

On June 7, 2012, the Appeals Council denied Plaintiff's request for review. *See* Dkt. No. 8-2 at 2. On July 31, 2012, Plaintiff filed an action in this Court, seeking review of Defendant's final decision denying her benefits. *See* Dkt. No. 1. In support of her motion, Plaintiff argued as follows: (1) the ALJ's errors of fact relating to medical evidence permeated his decision and

there was not substantial evidence to support that decision; (2) the ALJ's residual functional capacity ("RFC") finding was the result of legal error and was not supported by substantial evidence; (3) the ALJ did not apply the appropriate legal standards in assessing Plaintiff's credibility; and (4) the ALJ erred when he failed to consult a vocational expert at Step 5, and the Commissioner did not meet her burden at this step. *See* Dkt. No. 10 at 1.

## I. DISCUSSION

### A. Standard of Review

#### 1. *Substantial evidence*

When reviewing the Commissioner's final decision, the district court may set aside the Commissioner's non-disability determination "only if the factual findings are not supported by 'substantial evidence' or if the decision is based on legal error." *Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000) (citations omitted); *see also Butts v. Barnhart*, 388 F.3d 377, 384 (2d Cir. 2004) (stating that the court "must determine whether the correct legal standards were applied and whether substantial evidence supports the decision" (citation omitted)). The court's factual review of the Commissioner's decision is limited to whether substantial evidence in the record supports the decision. *See Halloran v. Barnhart*, 362 F.3d 28, 31 (2d Cir. 2004) (quotation omitted). The Supreme Court has defined substantial evidence to mean "'more than a mere scintilla'" and "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quotation omitted). An ALJ must also set forth the crucial factors justifying his findings with sufficient specificity to allow the court to determine whether substantial evidence supports the decision. *See Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984) (citation omitted).

"To determine on appeal whether an ALJ's findings are supported by substantial

evidence, a reviewing court considers the whole record, examining the evidence from both sides,

because an analysis of the substantiality of the evidence must also include that which detracts

from its weight." *Williams on behalf of Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988)

(citations omitted).  A court, however, "cannot substitute its interpretation of the administrative

record for that of the Commissioner if the record contains substantial support for the ALJ's

decision." *Scott v. Comm'r of Soc. Sec.*, No. 06-CV-481, 2009 WL 1559819, *2 (N.D.N.Y. June

2, 2009) (citation omitted).

However, the district court may not affirm an ALJ's disability determination if it

reasonably doubts whether the ALJ applied the proper legal standards, even if it appears that

substantial evidence supports that determination.  *See Pollard v. Halter*, 377 F.3d 183, 188-89

(2d Cir. 2004) (quotation omitted); *Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987).

"'Failure to apply the correct legal standards is grounds for reversal.'"  *Pollard*, 377 F.3d at 189

(quotation omitted).

## 2. *Five-step determination of disability*

To be eligible for DIB, a claimant must show that he suffers from a disability within the

meaning of the Act.  The Act defines "disability" as an "inability to engage in any substantial

gainful activity by reason of any medically determinable physical or mental impairment which

can be expected to result in death or which has lasted or can be expected to last for a continuous

period of not less than 12 months[.]"  42 U.S.C. § 423(d)(1)(A); *see also* 42 U.S.C.

§ 1382c(a)(3)(A).  In addition, a claimant's

> [p]hysical or mental impairment or impairments [must be] of such
> severity that he is not only unable to do his previous work but
> cannot, considering his age, education, and work experience,

engage in any other kind of substantial gainful work which exists
in the national economy, regardless of whether such work exists in
the immediate area in which he lives, or whether a specific job
vacancy exists for him, or whether he would be hired if he applied
for work .

42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

In evaluating DIB claims, the ALJ follows a five-step sequential process:

First, the [ALJ] considers whether the claimant is currently
engaged in substantial gainful activity. If he is not, the [ALJ] next
considers whether the claimant has a "severe impairment" which
significantly limits his physical or mental ability to do basic work
activities. If the claimant suffers such an impairment, the third
inquiry is whether, based solely on medical evidence, the claimant
has an impairment which is listed in Appendix 1 of the regulations.
If the claimant has such an impairment, the [ALJ] will consider
him disabled without considering vocational factors such as age,
education, and work experience[.] . . . Assuming the claimant does
not have a listed impairment, the fourth inquiry is whether despite
the claimant's severe impairment, he has the residual functional
capacity to perform his past work. Finally, if the claimant is
unable to perform his past work, the [ALJ] then determines
whether there is other work which the claimant could perform.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982); *see also* 20 C.F.R. §§ 404.1520, 416.920.

"[T]he claimant bears the burden of proving disability at the first four steps." *Berry*, 675

F.2d at 467. If the claimant meets his burden, then the Commissioner has the burden of proof at

the fifth step. *See id.*

**A. Whether the ALJ committed errors relating to his analysis of the medical evidence**

Although "'[a] claimant need not be an invalid to be found disabled under the Social

Security Act[,]'" *Meadors v. Astrue*, 370 F. App'x 179, 185 (2d Cir. 2010) (quoting *Vasquez v.

Barnhart*, No. 02-cv-6751, 2004 WL 725322, at *11 (E.D.N.Y. Mar. 2, 2004)), the claimant

must have a severe impairment. A severe impairment is one that "significantly limits [a

claimant's] physical or mental ability to do basic work activities[.]" 20 C.F.R. § 416.920(c). An

impairment is "not severe" when evidence establishes only slight abnormalities that would have

no more than a minimal effect on work ability. *See* 20 C.F.R. § 404.1521. The severity analysis

of a claimant's impairment "shall consider the combined effect of all of the individual's

impairments without regard to whether any such impairment, if considered separately, would be

of such severity." 42 U.S.C. § 423(d)(2)(B). If the claimant does not "have a severe medically

determinable physical or mental impairment that meets the duration requirement" of twelve

months, then claimant will not be found disabled. *See* 20 C.F.R. § 416.920(a)(4)(ii); *see* 20

C.F.R. § 416.909. "An impairment or combination of impairments is not severe if it does not

significantly limit [a claimant's] physical or mental ability to do basic work activities." 20

C.F.R. § 416.921(a). Basic work activities include those "abilities and aptitudes necessary to do

most jobs" and include "[p]hysical functions such as walking, standing, sitting, lifting, pushing,

pulling, reaching, carrying, or handling." 20 C.F.R. § 416.921(b)(1).

The ALJ must give controlling weight to the opinion of a treating physician where that

opinion is "supported by medically acceptable clinical and laboratory diagnostic techniques and

is not inconsistent with other substantial evidence in the record." *Audi v. Astrue*, No. 07-CV-

1220, 2009 WL 3199481, *13 (N.D.N.Y. Sept. 30, 2009) (citing *Schisler v. Sullivan*, 3 F.3d 563,

567 (2d Cir. 1993) (citing 20 C.F.R. § 404.1527(d))). When the opinion of the treating physician

is well supported by medical evidence and is consistent with the record in general, the ALJ will

give that opinion proportionally greater weight. *See* 20 C.F.R. § 404.1527(c)(3)-(4).

Furthermore, the ALJ will give even greater weight to the opinions of specialist treating

physicians with respect to a claimant's medical conditions related to their specialty. *See* 20

C.F.R. § 404.1527(c)(5). If an ALJ does not give controlling weight to a treating physician's

medical opinion, the weight he accords that opinion depends on several considerations. *See Audi*, 2009 WL 3199481, at *13, *see also* 20 C.F.R. § 404.1527(c)(2). These considerations are "'"(i) the frequency of examination and the length, nature, and extent of the treatment relationship; (ii) the evidence in support of the opinion; (iii) the opinion's consistency with the record as a whole; and (iv) whether the opinion is from a specialist."'" *Audi*, 2009 WL 3199481, at *13 (quoting *Anderson v. Astrue*, 2009 WL 2824584, at *9 (E.D.N.Y. Aug. 28, 2009) (quoting *Clark v. Comm'r of Soc. Sec.*, 143 F.3d 115, 118 (2d Cir. 1998) (citing 20 C.F.R. § 404.1527(d)))). Moreover, the ALJ must "'give good reasons'" for the weight he accords to a treating physician's medical opinion. *See Audi*, 2009 WL 3199481, at *13 (quotation omitted).

Where an ALJ finds against the claimant, he must set forth the specific reasons for the weight he assigned to a treating source's opinion. *See* SSR 96-2p, 1996 WL 374188 (July 2, 1996); *see also Lunan v. Apfel*, No. 98-CV-1942, 2000 WL 287988, *5 (N.D.N.Y. Mar. 10, 2000) (holding that remand was necessary because the ALJ did not discuss the weight he assigned or the reasons for assigning such weight to treating source opinions, as 20 C.F.R. § 404.1527(d) requires). Finally, so long as the ALJ properly exercises his discretion, the court must limit its review to whether substantial evidence supports the ALJ's decision; the court may not second guess the ALJ's balancing of the evidence. *See Parker v. Harris*, 626 F.2d 225, 231 (2d Cir. 1980) (citations omitted).

Plaintiff disputes three primary ALJ findings. First, the ALJ noted that an electromyography (EMG) administered to Plaintiff "revealed no evidence of carpal tunnel syndrome but only mild right ulnar nerve findings." *See* Dkt. No. 1-1 at 7. Second, the ALJ stated that there was no evidence to support complete knee replacement surgery because Plaintiff's "treating physician reported minimal disability," and Plaintiff "has had normal

physical examinations and x-rays." *See id.* at 8. Third, the ALJ cited the medical assessments, based on reviews of MRI scans and X-rays from 2005 to 2010, of Dr. Norman M. Krause, Dr. Mahender Goriganti, Dr. Kalyani Ganesh, Dr. Patrick Hughes, and Dr. Mary Trusilo, all of which averred that Plaintiff was not disabled under the Act's meaning. *See id.* at 8.

### 1. *The three primary ALJ findings in dispute*

#### a. EMG

Dr. Reich conducted the EMG at issue on November 19, 2008. *See* Dkt. No. 8-7 at 165-67. In the summary of that test, he explained that Plaintiff had "[m]oderate focal ulnar motor slowing at the left elbow, and mild on the right." *See id.* at 166. Dr. Reich concluded that the "[f]indings [were] consistent with a moderately advanced focal ulnar nerve palsy at the left elbow, and mild on the right side." *See id.* at 167. Further, he stated that there was "[n]o apparent [carpal tunnel syndrome] on either side;" and he directed Plaintiff "not to lean on her elbows anymore." *See id.*

The ALJ recited, nearly verbatim, Dr. Reich's conclusion that the EMG "revealed no evidence of carpal tunnel syndrome but only mild right ulnar nerve findings." *See* Dkt. No. 1-1 at 7. In addition, the ALJ acknowledged that, during the same nerve conduction study, Plaintiff had "moderately advanced focal ulnar nerve palsy at the left elbow and mild on the right." *See* Dkt. No. 10 at 13. However, the ALJ found that "mild right ulnar nerve findings" were not severe impairments. In light of the fact that the ALJ cited Dr. Reich's EMG report as a basis for his decision, there is no basis for Plaintiff's contention that the ALJ relied on his own lay opinion about the medical evidence. Therefore, the Court finds that the ALJ did not err in evaluating this medical evidence.

### b. *No evidence for pending knee surgery, the treating physician found Plaintiff not disabled, and Plaintiff had normal x-rays*

The ALJ found that there was no evidence to support complete knee replacement surgery, noting that even Plaintiff's treating physician "reported minimal disability" and that Plaintiff "has had normal physical examinations and x-rays." *See* Dkt. No. 1-1 at 8. In making the determination that there was no evidence for reconstructive or complete knee surgery, the ALJ cited Exhibit "28F." Exhibit "28F" consisted of lab results and health review forms from the Community Health Center, which included a relevant MRI exam from Crouse Radiology Associates. On April 7, 2010, the Center conducted an MRI exam on both of Plaintiff's knees. The "findings" for both knees were "[b]ony mineralization is normal," "no evidence of fracture or dislocation," and "[n]o significant soft tissue abnormalities are present." *See* Dkt. No. 8-7 at 240-41.

Dr. Sullivan, of Auburn Orthopaedic Specialists, specifically reviewed an MRI taken of Plaintiff's knee, and stated:

> Her MRI films are reviewed and report are reviewed [sic] and they are essentially normal. There is no effusion in the knee. There is no cartilage tear. There is no ligament tear. There is perhaps a little bit of patellar arthritis . . . . On clinical exam there is no effusion, no swelling, full ROM. She ambulates without evidence of a limp. She demonstrates records of previous knee studies which are essentially normal and she is concerned that some days [sic] she will get advanced arthritis in her knee and may require surgery for it . . . . I do not see a significantly disabling disorder of her knees. Her only limitation would be to avoid repetitive climbing or squatting. She has a minimal disability from her knees.

*See* Dkt. No. 8-8 at 2.

Dr. Sullivan, on July 7, 2010, conducted a follow-up examination of Plaintiff's knee pain. *See* Dkt. No. 8-8 at 4. This exam included a review of x-rays on the knees, dated April 7, 2010,

which "showed some very mild medial joint space arthritis," concluding that Plaintiff's "knee complaints continue to be of an anterior achiness and stiffness." *See id.* Based on both of Dr. Sullivan's reports, the Court finds that the ALJ did not err in evaluating the medical evidence concerning Plaintiff's knees.

### c. At least six doctors found that Plaintiff suffered from chronic low back pain

The ALJ thoroughly reviewed the record as to the nature and extent of Plaintiff's lower back pain, which the ALJ found to be a "severe impairment." *See* 20 C.F.R. § 416.920(c). The record indicates that there was substantial medical evidence to support this finding.

On October 31, 2005, the day after the alleged onset date, an x-ray of Plaintiff's lumbosacral spine was taken at Auburn Memorial Hospital, indicating that there were "no bone abnormalities," "[n]o fractures or dislocations," and "[n]o significant intervertebral disc space narrowing or significant arthritic change." *See* Dkt. No. 8-7 at 4, Exhibit "1F." From February 2005 to January 2006, standard care was provided to Plaintiff for what was consistently identified as "pain/stiffness" and "back pain." *See* Dkt. No. 8-7 at 12, 14. On March 8, 2006, Dr. Krause, who conducted an exam of Plaintiff, stated that she "has some tenderness in the left paralumbars," and the "ROM is actually quite good." *See* Dkt. No. 8-7 at 17. From the EMG conducted on June 19, 2006, Dr. Goriganti explained that there were "[n]ormal findings in all the muscles bilaterally with evidence of denervation and reinnervation changes in bilateral L4/5 distribution and no other evidence of myopathy plexopathy or lumbar radiculopathy [sic]." *See* Dkt. No. 8-7 at 75, Exhibit "8F." Dr. Goriganti revealed that Plaintiff was not working but was looking for jobs and was taking Motrin, Tramadol, Skelaxin and Elavil to manage her lower back pain. *See id.* at 76. Dr. Goriganti's impression was "[m]echanical low back pain, chronic

11

sprain/strain lumbosacral spine." *See id.* Dr. Goriganti commented on Plaintiff's work status, stating that Plaintiff was "capable of light duty work only." *See id.* at 77, 80, 84.

In four follow-up visits between February and July 2008, Dr. Goriganti continued asserting his medical opinion that Plaintiff suffered from chronic low back pain. *See* Dkt. No. 8-7 at 141-144. In the last exam, dated July 14, 2008, Dr. Goriganti stated that Plaintiff "has paraspinal muscle spasm with normal lumbar lordosis and fairly functional range of motion of her lumbar spine." *See id.* at 141. Further, the plan of management was strikingly similar to all previous exams, prescribing her Motrin, Ultram, Elavil, and Flexeril. *See id.*

On February 26, 2009, Dr. Reich, in a referral letter, stated that Plaintiff suffered from "chronic post-traumatic low back pain, perhaps some possibility with L5 radiculopathy." *See* Dkt. No. 8-7 at 163. On July 26, 2009, Dr. Ganesh, who conducted an independent consultative examination, concluded that Plaintiff had a "prolonged back injury" since October 30, 2005. *See* Dkt. No. 8-7 at 176. On February 19, 2010, Dr. Hughes found that Plaintiff "sustained an acute lumbosacral strain, causally related to her work injury" and had a "moderate partial disability." *See* Dkt. No. 8-7 at 215.

On December 1, 2010, at the North Office of the New York Spine & Wellness Center, Dr. Trusilo diagnosed Plaintiff with "lumbar degenerative disc disease." *See* Dkt. No. 8-8 at 13. In the same report, under the review of labs/scans, he stated, "[r]eview of lumbar spine MRI: Moderate degenerative disc disease at L5-S1 with type 1 degenerative signal changes in the veterbral body and plate. No acute disc herniation. No spinal canal narrowing. The remainder of lumbar spine is normal." *See id.* at 14. In paragraph 6 of the "Treatment Plan," Dr. Trusilo stated, "[t]he patient has a partial impairment, mild-to-moderate approximately 33%." *See id.* Notably, Dr. Trusilo "reported that an MRI scan did not reveal any evidence of disc herniation or

spinal stenosis." *See* Dkt. No. 1-1 at 8. Additionally, a report from the Syracuse Orthopedic

Specialists (SOS), under "Findings," stated, "[t]here is moderate degenerative disc disease L5-S1

with type 1 degenerative signal changes in the vertebral body end plates. There is no bulging or

herniated disc. No significant spinal canal narrowing. The L5-S1 facet joints are normal." *See*

Dkt. No. 8-8 at 20.[1]

Since the ALJ's conclusion that Plaintiff's lower back pain was a severe impairment is

consistent with the opinions of Plaintiff's physicians, the Court finds that the ALJ properly

assessed the medical evidence as required at step two of the sequential evaluation process.

### 1. *Harmless error*

Even if the ALJ did not identify severe impairments other than Plaintiff's chronic low

back pain at step two, such error was harmless. *See Stanton v. Astrue*, 370 F. App'x 231, 233

(2d Cir. 2010). In *Stanton*, the plaintiff argued that the ALJ erred at step two of the five-step

analysis by failing to acknowledge that she suffered from disc herniation. *See id.* at 234. The

Second Circuit dismissed the plaintiff's argument because she failed to raise it at the district

court level. *See id.* However, in footnote 1 of the decision, the Second Circuit explained that,

even if it had not deemed the argument waived and the court had reached the merits, there was

no *"error warranting remand because the ALJ did identify severe impairments at step two"* and,

thus, the plaintiff's claim "proceeded through the sequential evaluation process." *Id.*

Here, the facts demonstrate that, although the ALJ did not find severe impairments to

Plaintiff's knees, jaw, or elbows, he did find that Plaintiff suffered from "chronic low back

---

[1] Notably, Dr. Trusilo's MRI finding contradicts a previous MRI conducted on March 27, 2006, which Dr. Hughes reviewed in his report. *See* Dkt. No. 8-7 at 215. However, there is nothing in the record stating which doctor took the MRI. Dr. Hughes is the same doctor who found that Plaintiff was only partially disabled. *See id.*

pain," which the ALJ characterized as a "severe impairment." *See* Dkt. No. 1-1 at 7. This finding ensured that Plaintiff's claim moved through the five-step evaluative process. Therefore, Plaintiff's argument that the ALJ committed errors in interpreting some medical evidence warranting remand is not supportable because the ALJ identified chronic low back pain as a "severe impairment" and addressed her other complaints in his analysis.

## A. Whether the ALJ's RFC finding was in error

The ALJ must consider the individual's functional limitations or restrictions and assess her work-related abilities on a function-by-function basis. *See* SSR 96-8p, 1996 WL 374184, *1 (July 2, 1996). In other words, the ALJ must make a function-by-function assessment of the claimant's ability to sit, stand, walk, lift, carry, push, pull, reach, handle, stoop, or crouch, based on medical reports from acceptable medical sources that include the sources' opinions as to the claimant's ability to perform each activity. *See* 20 C.F.R. §§ 416.913(c)(1), 416.969a(a); *Martone v. Apfel*, 70 F. Supp. 2d 145, 150 (N.D.N.Y. 1999) (citations omitted). An ALJ can express the claimant's RFC in terms of the exertional levels of work -- sedentary, light, medium, heavy, and very heavy -- only after he has completed the function-by-function analysis. *See Hogan v. Astrue*, 491 F. Supp. 2d 347, 354 (W.D.N.Y. 2007) (quoting Social Security Ruling 96-8p, 1996 WL 374184, at *1 (S.S.A.).

The crucial factors in an ALJ's determination "must be set forth with sufficient specificity" to enable a court "to decide whether the determination is supported by substantial evidence." *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984) (citation omitted). However, the court does "not require that [the ALJ] have mentioned every item of testimony presented to him or have explained why he considered particular evidence unpersuasive or insufficient to lead

him to a conclusion of disability." *Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983) (citation omitted).

The regulations outline the physical exertion requirements, explaining that, "[t]o determine the physical exertion requirements of work in the national economy, we classify jobs as sedentary, light, medium, heavy, and very heavy." 20 C.F.R. § 416.967. "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. § 416.967(b). Further, "a job is in this category when it requires a good deal of walking or standing or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." *Id.*

Based on its review of the entire record, the Court finds that there is sufficient evidence to support the ALJ's conclusion that Plaintiff can do light work. Specifically, the ALJ relied on the following facts.

In his July 6, 2009 independent consultative examination report, Dr. Ganesh stated that Plaintiff had a "prolonged back injury" since October 30, 2005. *See* Dkt. No. 8-7 at 176. He also reported that Plaintiff could "cook five days a week, clean[] three to four times, [do] laundry two or three times, and shop[] three to four times." *See id.* at 177. In addition, he noted that "[s]he shower[ed] five times a week and dresse[d] daily." *See id.*

Specifically, under the "General Appearance, Gait, Behavior, Station" section of the report, Dr. Ganesh stated:

> The claimant appeared to be in no acute distress. Gait normal. Can walk on heels and toes without difficulty. Cannot squat in full. Station normal. Used no assistive device. Needed no help changing for the exam or getting on and off exam table. Able to rise from chair without difficulty.

*See id.*

Under the "Thoracic and Lumbar Spines" section, Dr. Ganesh stated, "[f]lexion 75 degrees, extension 10 degrees. There is spinal and left paraspinal tenderness. Left sciatic notch tenderness. No SI joint tenderness. No spasm. No scoliosis or kyphosis. SLR test negative bilaterally. No trigger points." *See id.* Under the "Lower Extremities" section, Dr. Ganesh noted, "Full ROM of hips, knees and ankles bilaterally. Strength 5/5 in proximal and distal muscles bilaterally. No muscle atrophy. No sensory abnormality. Reflexes physiologic and equal. No joint effusion, inflammation or instability." *See id.* at 178. Finally, under the "Medical Source Statement" section, Dr. Ganesh reported, "No limitation sitting, standing, and walking. Mild to moderate limitation lifting, carrying, pushing and pulling." *See id.*

On February 19, 2010, Dr. Hughes stated that Plaintiff "can work with a restriction to light duty," meaning "[n]o sitting for more than 30 minutes, standing for more than an hour, walking for more than 10 minutes, or lifting more than 20 pounds." *See* Dkt. No. 8-7 at 215. As previously mentioned, Dr. Hughes concluded that the Plaintiff had a "moderate partial disability." *See id.*

On December 1, 2010, Dr. Trusilo, under her "Treatment Plan" for Plaintiff, stated that Plaintiff had "a partial impairment, mild-to-moderate approximately 33%." *See* Dkt. No. 8-8 at 14. All of the above statements and findings of Dr. Ganesh, Dr. Hughes, and Dr. Trusilo are consistent with the statutory exertional guidelines for light work.

In addition, although Plaintiff argues that Dr. Goriganti restricted her "to occasional lifting and carrying of up to 20 pounds and repetitive lifting and carrying of up to ten pounds," *see* Dkt. No. 10 at 15, this opinion also supports the ALJ's finding that Plaintiff could do light work. *See* 20 C.F.R. § 416.967(b).

Lastly, despite Plaintiff's argument to the contrary, Dr. Naughton's opinion does not run counter to the ALJ's finding. In fact, when considered in their entirety, Dr. Naughton's statements paint a broader and clearer picture of his assessment of Plaintiff, which supports the ALJ's conclusion. Dr. Naughton stated that Plaintiff was in "no acute distress," had "full rotary movement" in her lumbar spine and only "moderate limitation" to walking and climbing stairs. *See* Dkt. No. 8-7 at 123-125. Dr. Naughton's report clearly expressed his view that Plaintiff's condition warranted only a moderate limitation to conducting most tasks. Further, Dr. Naughton did not mandate that Plaintiff must be restricted from those "activities requiring a mild or greater exertion in terms of pushing, pulling, reaching, or carrying and handling objects;" rather, he noted that she might need to be. *See id.* Finally, Dr. Naughton's report reflects a conclusion that Plaintiff has full power in her extremities and relatively normal physical functions, displaying all-around good range of motion.

For the above-stated reasons, the Court finds that the ALJ's RFC finding did not constitute legal error and was supported by substantial evidence.

## B. Whether the ALJ applied the appropriate legal standards in assessing Plaintiff's credibility

When evaluating a claimant's symptoms, the ALJ will consider the following: (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of the claimant's pain or other symptoms; (3) precipitating or aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication the claimant takes or has taken to alleviate her pain or other symptoms; (5) treatment, other than medication, the claimant receives or has received for relief of her pain or other symptoms; (6) any measures the claimant uses or has used to relieve her pain or other symptoms (e.g., lying flat on his back, standing for 15 to 20 minutes

every hour, sleeping on a board, etc. . . .); and (7) other factors concerning the claimant's

functional limitations and restrictions due to pain or other symptoms. *See* 20 C.F.R.

§ 416.929(c)(3)(i)-(vii). Although an ALJ "is required to take the claimant's reports of pain and

other limitations into account, 20 C.F.R. § 416.929," he is "not required to accept the claimant's

subjective complaints without question[.]" *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010)

(citation omitted).

In assessing a claimant's credibility, the ALJ must follow a two-step process. First, "the

ALJ must decide whether the claimant suffers from a medically determinable impairment that

could reasonably be expected to produce the symptoms alleged." *Id.* (citing 20 C.F.R.

404.1529(b)). If so, the ALJ must then consider "'the extent to which [the claimant's] symptoms

can reasonably be accepted as consistent with the objective medical evidence and other evidence

of record.'" *Id.* (quotation omitted). After weighing the objective medical evidence, the

claimant's demeanor, other indicia of credibility, as well as any inconsistencies between the

medical evidence and a claimant's subjective complaints, the ALJ may decide to disregard the

claimant's subjective opinion with respect to the degree of impairment. *See* 20 C.F.R.

§§ 404.1529(c)(4), 416.929(c)(4); *Tejada v. Apfel*, 167 F.3d 770, 776 (2d Cir. 1999) (citations

omitted); *Garrison v. Comm'r of Soc. Sec.*, No. 08-CV-1005, 2010 WL 2776978, *5-*7

(N.D.N.Y. June 7, 2010).

In this case, Plaintiff asserts that the ALJ erred by concluding that her testimony concerning

the intensity, persistence, and limiting effects of her impairments was not credible. Substantial

evidence supports the ALJ's determination that Plaintiff's complaints are not entirely credible.

First, Plaintiff claims that her knees are in a debilitating state. However, Plaintiff did not state

with any certainty as to when she would need surgery. *See* Dkt. No. 8-2 at 29. Further, Plaintiff

stated that she was not undergoing any treatment for her knee. *See id.* at 30. Plaintiff also alleged future surgery on her jaw. *See id.* at 33. Yet, the record reveals no specific date for surgery on her jaw, nor any current medication or regular checkups for her jaw. *See id.* at 33-34. In addition, the record further reveals no current medical treatment for her elbows nor a surgical date on the horizon. *See* Dkt. No. 34-35; *see* Dkt. No. 1-1 at 7.

Along with the above-stated reports from Plaintiff's treating physicians throughout the record, which belie her claims of disabling pain, Plaintiff's own testimony is rife with uncertainty regarding current treatment and future corrective procedures for her knees, jaw, and elbows. The ALJ clearly asked the appropriate questions to evaluate the "intensity" and "persistence" of Plaintiff's symptoms regarding her knees, jaw, and elbows. *See* 20 C.F.R. § 416.929(c). Furthermore, the ALJ did not summarily dismiss or ignore Plaintiff's testimony; rather, he considered her "statements about [her] symptoms" regarding her physical dysfunctions. Finally, the ALJ sufficiently explained why Plaintiff's claims of painful symptoms were inconsistent with the objective medical evidence in the record. Given Plaintiff's testimony and the totality of the record, it is clear that the ALJ properly considered all seven statutory factors in assessing Plaintiff's credibility. *See* 20 C.F.R. § 416.929(c)(3)(i)-(vii). Further, the ALJ provided specific reasons why he did not find any debilitating or plaguing injuries severe enough in the knees, jaw, or elbows.

For all these reasons, the Court concludes that the ALJ applied the correct legal standards in assessing Plaintiff's credibility and that there is substantial evidence in the record to support his conclusion.

### C. Whether the ALJ erred in failing to consult a vocational expert at Step Five

Once a disability claimant proves that her severe impairment prevents her from performing her past work, the Commissioner then has the burden of proving that the claimant still retains a residual functional capacity to perform alternative substantial gainful work that exists in the national economy. *See Berry*, 675 F.2d at 467; *Parker*, 626 F.2d at 231. The Commissioner's burden at step five is generally satisfied by referring to the applicable rule of the Medical-Vocational Guidelines set forth at 20 C.F.R. Part 404, Subpart P, Appendix 2 (the "Grids"). *See Bapp v. Bowen*, 802 F.2d 601, 604 (2d Cir. 1986) (citation omitted). However, the Grids may not be controlling if the claimant suffers from further nonexertional impairments. *See* 20 C.F.R. Pt. 404, Subpt. P. App. 2 § 200.00(e)(2) (1986).

If a claimant has nonexertional limitations that "'significantly limit the range of work permitted by his exertional limitations,'" the ALJ is required to consult with a vocational expert. *Bapp*, 802 F.2d at 605 (quoting *Blacknall v. Heckler*, 721 F.2d 1179, 1181 (9th Cir. 1983) (*per curiam*)). However, the "mere existence of a nonexertional impairment does not automatically . . . preclude reliance on the guidelines." *Id.* at 603. A nonexertional impairment "significantly limit[s]" a claimant's range of work when it causes an "additional loss of work capacity beyond a negligible one or, in other words, one that so narrows a claimant's possible range of work as to deprive him of a meaningful employment opportunity." *Id*. at 606 (footnote omitted). Essentially, the "application of the grid guidelines and the necessity for expert testimony must be determined on a case-by-case basis." *Id.* at 605. The Grids provide a framework when nonexertional impairments supplement exertional hindrances. *See Rosa v. Callahan*, 168 F.3d 72, 78 (2d Cir. 1999).

In this case, the record is void of any evidence, such as a treating physician's or specialist's diagnosis, that Plaintiff suffers from a nonexertional limitation. Therefore, there is no basis to argue that the ALJ had any need to rely on a vocational expert. Based on the foregoing reasons, the Court finds that the ALJ did not err in failing to consult a vocational expert.

## I. CONCLUSION

After reviewing the entire file in this matter, the parties' submissions and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that Plaintiff's motion for judgment on the pleadings is **DENIED**, and Defendant's motion for judgment on the pleadings is **GRANTED**; and the Court further

**ORDERS** that the Clerk of the Court shall enter judgment in favor of Defendant and close this case.

**IT IS SO ORDERED**

Dated: March 31, 2014
Syracuse, New York

Frederick J. Scullin, Jr.
Senior U.S. District Judge